UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COMMERCE WEST INSURANCE
COMPANY ,

                          Plaintiff,

        v.

MARY ROLAND,

                          Defendant.

CASE NO. C24-5709 BHS

ORDER

THIS MATTER is before the Court on plaintiff Commerce West Insurance
Company's motion for summary judgment, Dkt. 14, and defendant Mary Roland's
motion for attorneys' fees[1] and costs, Dkt. 27.

The case involves a water loss at Roland's Commerce West-insured home.
Commerce West seeks summary judgment on its claim for a declaratory judgment that
the loss was not covered under the policy. Because the cause of the loss and the

---

[1] Roland has not prevailed, and when she filed her motion, she was proceeding a pro se
had not incurred attorneys' fees. She cites no legal basis for her premature fee request and her
motion is **DENIED**.

ORDER - 1

reasonableness of Roland's efforts to avoid it present material questions of fact, the motion is **DENIED**.

## I.    BACKGROUND

Commerce West issued a homeowners' policy for Roland's house in Spanaway, Washington. Roland discovered damage caused by a water leak in the home's master shower on February 12, 2024, after she was alerted to an abnormally high water bill. She traveled to the house from her primary residence in Seattle, saw the water damage, called the sheriff, and had the home's water and power turned off. She notified her insurer, Commerce West, about the loss the same day, and made a claim for the damage under her homeowner's policy. Roland had not been to her home since just before Christmas 2023.

On March 5, 2024, Commerce West sent Roland a "Reservation of Rights Letter," explaining that it would investigate the loss while reserving its rights to deny the claim for various reasons under the policy. Dkt. 1 at 13. The letter referenced potentially applicable exclusions based on (1) the insured's "neglect" to use all reasonable means to save and preserve covered property at and after the time of a loss, (2) intentional acts, and (3) wear and tear. *Id*. at 14. It did not attach the policy.

The next documented event is Roland's "recorded interview (RI)," taken by Commerce West adjuster Chris Hall on April 4. This interview itself is not in evidence, but Commerce West's motion relies on an internal April 24 "Note Document Summary" which is its summary of Roland's version of events. Dkt. 15-1 at 18. It reflects that Roland went to the house on February 12, found water "gushing" from the shower valve, was unable to turn it off, and called 911. *Id*. Commerce West's summary notes that

1    Roland "stated the heat was on but she could not say what temperature was set at as she
2    had not set the heat in some time." *Id.*

3        On April 22, Commerce West engaged an investigator, EFI Global, to "determine
4    the cause of the plumbing failure and to determine if adequate heat was provided to
5    prevent a freeze failure." Dkt. 15-3 at 4. EFI submitted its report to Commerce West on
6    June 3. It concludes that the master shower's mixing valve froze and cracked during the
7    January 2024 "cold snap" due to inadequate heating of the subject home. *Id.* at 7. EFI
8    learned and stated that the home used "0 therms of gas" between February 2023 and
9    January 2024. *See* Dkt. 15-3 at 7. Commerce West has not placed the bills upon which
10   this report is based into evidence.

11       On June 11, Commerce West entered another Note Document Summary,
12   internally documenting and communicating EFI's investigation and conclusion, and
13   seeking from "examining" input on whether "we should send to DC for EUO & coverage
14   opinion, or move forward with denial." *Id*. A similar internal Note Document Summary
15   the same day responded that Commerce West should contact counsel about whether to
16   "deny based on the investigation to date or take the insured's EOU first." It stated that the
17   investigation was "quite conclusive that Roland neither maintained proper heat in the
18   dwelling or drain/ winterized it in anticipation of her extended absence." *Id*.

19       Commerce West took Roland's Examination Under Oath (EUO) on July 29. In it,
20   Roland testified that while she was unsure of the exact temperature on her thermostat, she
21   typically set it at 70 or the low 70s, and left it there:

22

1   **Q. What did you normally keep the thermostat at the Spanaway**
    **property set at when you weren't there?**

2       A.      Well, may have been in the 70s, low 70s**.**

3   Dkt. 15-2 at 19.

4       **Q. Do you have a specific recollection of what the temperature would**
        **have been set at when you left the week before Christmas?**

5       A. I can't say specifically. When I come in the house I don't check the
        thermostat. It's just there.

6       **Q. But is there a temperature you like to set it at when you leave?**
        **Because you don't need it to be at 70 when you're not there. So do you**

7       **set it at 60? 50?**
        A. No, no. I may not have needed it at that time, but I think when I was

8       there I probably would set it about in the 70s.
        **Q. But when you weren't there, when you were going to walk out the**

9       **door and you're not going to be there for a couple weeks --**
        A. I don't -- I don't turn it off. I just would leave it.

10      **Q. You think you would have left it where it would have been**
        **somewhere in the 70s?**

11      A. Yeah. I just left it.

12  Dkt. 15-2 at 20–21.

13      Commerce West sued Roland on August 28, 2024, seeking a Declaratory

14  judgment that the loss was not covered by the Policy because Roland "did not take

15  reasonable steps to protect the home from a frozen pipe break, in violation of her

16  Commerce policy." Dkt. 1 at 3. Commerce West's complaint does not quote or attach its

17  policy. Instead, it relies on the two June 11 Note Document Summaries, its March 5

18  reservation of rights letter, and the April 24 Note Document Summary. Dkt. 1 at Exs. A,

19  B, C, and D, respectively.

20      Commerce West now seeks summary judgment on its declaratory judgment claim,

21  asserting:

22

The Policy specifically excludes coverage when property damage arises out of a freeze in the plumbing of the property. The plain language of the policy regarding freezing in unattended residences precludes coverage. Additionally, coverage is precluded because reasonable care was not taken to maintain heat in the property and water was not shut off and drained during the period of absence from the property.

Dkt. 14 at 2. Commerce West's motion relies on its own complaint and exhibits, Roland's EUO, EFI's report (including its assertion that Roland said the thermostat was turned off while she was away, Dkt. 14 at 9), and its reservation of rights letter. Dkts. 15-1–15-4. The motion purports to quote the policy language upon which it is based, but neither that language nor the policy itself is in evidence.

Commerce West's motion asserts that its policy provided:

**C. EXCLUSIONS APPLYING TO COVERAGES A AND B:**

**1. Freezing, Discharge, Leakage, or Overflow -- Unoccupied Residence** – "We" do not pay for loss caused by freezing or the resulting discharge, leakage, or overflow from any plumbing, heating, air conditioning, or automatic fire protective sprinkling system; water heater; or domestic appliance if the "residence" is vacant, unoccupied, or under construction and unoccupied. This exclusion does not apply if "you" take reasonable care to:
> **a.** maintain heat in the building or mobile home; or
> **b.** shut off the water supply and completely empty liquids from such system, heater, or appliance.

Dkt. 14 at 4 (citing its reservation of rights letter, Dkt. 1 at 13–16).

Roland did not have an attorney when she responded to Commerce West's motion. Dkt. 20. Her response focused on the temperate February weather and her concerns about her tankless water heater. She contends that the water damage was not the result of freezing.

1    Roland has since obtained counsel, and he has filed on her behalf a short

2    supplemental response, Dkt. 31, supported by her supplemental declaration, Dkt.

3    32. Consistent with her EUO, Roland's declaration asserts that she always kept the

4    thermostat at 70 degrees or more. She denies she told EFI the thermostat was off

5    and denies that freezing caused the loss. Her supplemental response argues the

6    reasonableness of her efforts to protect the home from freezing while she was

7    away from the home for six or seven weeks is a question of fact precluding

8    summary judgment.

9    Commerce West objects to the supplemental response, arguing that it is

10   untimely under the Local Rules. Dkt. 34 at 2. Substantively, it argues that

11   Roland's current claim about the thermostat setting is inconsistent with her EUO

12   testimony, which was not "definitive" about the setting. It argues that Roland

13   "guessed" at the temperature in her EUO and reiterates that she told EFI that the

14   thermostat was off, and that EFI concluded that the leak was caused by the lack of

15   heat in the home. *Id*. at 3.

16                              **II.   DISCUSSION**

17   Summary judgment is proper if the pleadings, the discovery and disclosure

18   materials on file, and any affidavits show that there is "no genuine dispute as to any

19   material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

20   P. 56(a). In determining whether an issue of fact exists, the Court must *view all evidence*

21   *in the light most favorable to the nonmoving party* and draw all reasonable inferences in

22   that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986);

*Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

The moving party bears the initial burden of showing that there is no evidence that supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

Interpretation of an insurance contract is a question of law. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007). The Court interprets the language as would a normal consumer. *See Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 272 (2011). It evaluates whether a policy covers a loss in two broad steps: It considers whether the insured has shown that the claimed loss falls within the policy's scope, and if so, it considers whether the insurer has demonstrated that the policy excludes the loss. *See*

1  *Babai v. Allstate Ins. Co.*, No. C12-1518-JCC, 2013 U.S. Dist. LEXIS 175336, at *4–5

2  (W.D. Wash. Dec. 13, 2013) (citing *McDonald v. State Farm Fire & Cas. Co.*, 119

3  Wn.2d 724, 730 (1992)).

4         The Court strictly construes exclusions and ambiguities against the insurer and

5  assigns undefined terms their ordinary meaning. *See Siena Del Lago Condo. Ass'n v. Am.*

6  *Fire & Cas. Co.*, No. C12-251 TSZ, 2013 WL 2127137, at *3 (W.D. Wash. May 14,

7  2013), *aff'd*, 639 F. App'x (9th Cir. 2016) (citing *Vision One, LLC v. Phila. Indem. Ins.*

8  *Co.*, 174 Wn.2d 501 (2012)); *see also Allstate Ins. Co. v. Raynor*, 143 Wn.2d 469, 476

9  (2001). If the Court concludes specific policy language excludes the claimed loss, the

10  loss is not covered.

11         Even if the Commerce West's description of its policy is accurate—there is no

12  evidence of the policy's terms—the issue is whether Commerce West has established as a

13  matter of law that Roland's efforts to maintain the heat at her home were unreasonable.

14         On this record, the Court cannot conclude that Roland's conduct was unreasonable

15  as a matter of law. There is ample evidence, even absent Roland's supplemental

16  declaration, that she endeavored to keep the thermostat at about 70 degrees, even when

17  she was away. EFI's assertion that she told someone there the thermostat was off is two

18  layers of hearsay, and it is rebutted by her RI, by Commerce West's own internal records,

19  by Roland's EUO, and by her supplemental declaration. On Commerce West's summary

20  judgment motion, the Court must view the evidence in the light most favorable to *Roland*,

21  not Commerce West. The evidence supports the finding that she left her thermostat on, at

22  about 70 degrees, when she was away from the home for six or seven weeks. The Court

cannot conclude as a matter of law that leaving one's residence for that period under those conditions is unreasonable, and that the policy exception therefore applies.

Commerce West's motion for summary judgment is **DENIED**. The cause of the leak and the reasonableness of Roland's conduct will be decided by the jury.

**IT IS SO ORDERED**.

Dated this 22nd day of April, 2025.

BENJAMIN H. SETTLE
United States District Judge